(No. 77038.

MELBA VAUGHN, Appellee, v. THE CITY OF WEST FRANKFORT, Appellant.

*Opinion filed May 18, 1995.*

Joseph A. Bleyer, of Bleyer & Bleyer, of Marion, for appellant.

Mark D. Prince, of Hughes & Associates, of Carbondale, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, Melba Vaughn, filed a personal injury action in the circuit court of Franklin County alleging negligence against defendant, the City of West Frankfort. Plaintiff sought recovery for injuries caused as a result of stepping into a hole while crossing Jefferson Street in West Frankfort. Defendant filed a motion to dismiss plaintiff's complaint for failure to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). The trial court found that defendant owed no duty to plaintiff and granted defendant's motion. On appeal, the appellate court reversed the trial court, holding that municipalities owe pedestrians a duty of reasonable care to keep city streets free from defects. (258 Ill. App. 3d 424.) In this appeal, in order to determine whether the trial court properly granted defendant's motion to dismiss, we must decide whether to impose upon municipalities a duty of reasonable care to keep city streets free from defects that may cause injuries to pedestrians crossing streets midblock, outside of the crosswalks. We decline to do so.

Plaintiff's complaint alleges that at approximately 10:30 p.m. on June 2, 1991, she was walking on the east side of Jefferson Street in West Frankfort. The sidewalk on the east side of Jefferson ended midblock. The plaintiff stepped into Jefferson Street and began to cross the street to reach the sidewalk on the west side of Jefferson Street. While crossing the street, plaintiff stepped into a hole, fell, and sustained injuries.

As we review the sufficiency of plaintiff's complaint, we accept all well-pleaded facts as true. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378.) In

order to state a cause of action in negligence, plaintiff must plead sufficient facts to establish that defendant owed plaintiff a duty of care, a breach of that duty, and an injury proximately caused by that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) Whether defendant owed plaintiff a duty of care is a question of law for the court. *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 6; *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 437-38.

The duty of a local government entity to maintain its property is limited by section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3—102 (West 1992)). Section 3—102(a) states in pertinent part:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." (745 ILCS 10/3—102(a) (West 1992).)

We must determine whether plaintiff in the case at bar is an "intended and permitted" user of the street under section 3—102(a) of the Act, keeping in mind that the Act "is in derogation of the common law" and must be strictly construed against the local government entity. (*Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 208.) The general rule that has evolved in Illinois with regard to the duty of a municipality to maintain its streets in a reasonably safe condition is that, since pedestrians are not intended users of streets, a municipality does not owe a duty of reasonable care to pedestrians who attempt to cross a street outside the crosswalks. *Curatola,* 154 Ill. 2d at 208; see *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417; *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330; *Risner v. City of Chicago* (1986), 150

Ill. App. 3d 827; *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473.

In *Curatola v. Village of Niles,* this court recognized a narrow exception to the general rule adhered to by Illinois courts and held that a pedestrian entering or exiting a legally parked vehicle was an intended and permitted user of the street around the vehicle. (*Curatola,* 154 Ill. 2d 201.) Thus, a duty was imposed on a municipality to maintain the street immediately around legally parked vehicles in a reasonably safe condition for pedestrians. (*Curatola,* 154 Ill. 2d 201; see also *Jorgensen v. Whiteside* (1992), 233 Ill. App. 3d 783; *Torres v. City of Chicago* (1991), 218 Ill. App. 3d 89; *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293.) However, the holding in *Curatola* was expressly limited. The court there stated that "[t]he narrow exception we recognize here concerns only the permitted and intended use of the street immediately around a legally parked vehicle by its exiting and entering operators and occupants." *Curatola,* 154 Ill. 2d at 213.

Plaintiff in the case at bar contends that we should recognize an additional exception to the general rule and find that she was an intended and permitted user of Jefferson Street. Plaintiff cites, and the appellate court relied upon, the Illinois Vehicle Code to support her assertion that she was a permitted and intended user of the street. Section 11—1003 of the Vehicle Code (625 ILCS 5/11—1003 (West 1992)) states:

"(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

\*\*\*

(c) Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk." (625 ILCS 5/11—1003(a), (c) (West 1992).)

Section 11—1007 states:

> "(a) Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.
>
> (b) Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." (625 ILCS 5/11—1007(a), (b) (West 1992).)

Plaintiff urges, and the appellate court found, that the statutory sections cited above indicate that pedestrians are permitted and intended users of the streets outside the crosswalk. Plaintiff also notes that the West Frankfort Municipal Code only requires pedestrians to cross a roadway within a crosswalk when they are in a business district or when there are traffic signals in operation. Plaintiff contends that since these statutory sections do not prohibit the use of streets by pedestrians, pedestrians are permitted users of public streets and roadways by implication.

Section 3—102(a) of the Act only imposes a duty of ordinary care on municipalities to maintain property for uses that are *both* permitted *and intended.* Even if we were to accept plaintiff's argument that she was a permitted user of Jefferson Street pursuant to the Vehicle Code, simply because "pedestrians may be permitted to cross the street midblock does not mean they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose." (*Wojdyla,* 148 Ill. 2d at 426.) Under section 3—102(a) of the Act, a plaintiff must be not only a legally permitted user of the public property, but also an intended user before a duty of reasonable care will be imposed upon the municipality.

In *Wojdyla,* this court stated that we should look to the property itself to determine the intended use. Streets are paved, marked and regulated by traffic signs for use by vehicles. "Pedestrian walkways are designated by

painted crosswalks by design, and by intersections by custom. These are the indications of intended use." (*Wojdyla*, 148 Ill. 2d at 426.) Under this rationale, pedestrians such as plaintiff, who cross a street or roadway midblock, outside of a crosswalk, are not intended users of the street as contemplated in section 3—102 of the Act. *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417; see *Gabriel v. City of Edwardsville* (1992), 237 Ill. App. 3d 649; *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911; *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330; *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78; *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827; *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473.

Plaintiff further argues that because the sidewalk on the east side of Jefferson Street ended midblock, and section 11—1007 of the Vehicle Code requires pedestrians to walk on the sidewalk where a sidewalk is provided and its use is practicable, it was necessary for her to cross the street midblock to reach the sidewalk provided on the west side of the street. Plaintiff contends that when a pedestrian's use of the street is necessary for such a purpose, the municipality must have intended such use and the municipality owes the pedestrian a duty, citing *Curatola* and *Torres v. City of Chicago.*

We disagree with plaintiff's assertion that it was "necessary" for her to traverse Jefferson Street midblock to reach the sidewalk available on the west side of the street. The cases cited by plaintiff involved pedestrians approaching or departing legally parked vehicles. In those cases, it was *impossible* for the pedestrian to access the vehicle or the sidewalk without walking in the street. (See *Curatola*, 154 Ill. 2d 201 (plaintiff injured while stepping off the back of a legally parked semitruck); *Torres*, 218 Ill. App. 3d 89 (plaintiff stepped into pothole while removing groceries from the trunk of his

legally parked car).) We find the facts in those cases distinguishable from the facts in the present case. It was not impossible for plaintiff to reach her destination without stepping into the street outside of a crosswalk, as was the case in *Curatola*.

We do not believe it was necessary for plaintiff to have crossed the street outside of the crosswalk. We note that in *Curatola* this court expressly declined to hold that where a pedestrian's use of a street is necessary to a permitted use, such use is always also intended. Whether a use is intended by a local government entity is not determined solely on the necessity of such use. (*Curatola*, 154 Ill. 2d at 213.) Plaintiff's argument that her path across Jefferson Street was necessary due to the end of the sidewalk on the east side of the street, and that her use of the street was, therefore, an intended use, is unpersuasive.

The appellate court, citing this court's decisions in *Wojdyla* and *Curatola*, noted that this court has uniformly declined to impose a duty upon municipalities when the pedestrian who walked in the street was injured by a moving vehicle, and yet has imposed a duty, in limited circumstances, when the pedestrian was injured by a defect in the street. The appellate court inferred that the question of whether a duty is to be imposed in pedestrian injury cases depends on the way in which the plaintiff was injured. The court stated that "*Wojdyla* and *Curatola*, have resolved the differences in treatment between plaintiffs injured in pedestrian-vehicle and pedestrian-defect accidents, and *** these cases have recognized a duty of reasonable care in pedestrian-defect cases." 258 Ill. App. 3d at 434-35.

We reject this distinction. As discussed above, the duty of a municipality depends on whether the *use* of the property was a permitted and intended use. (745 ILCS 10/3—102(a) (West 1992).) Whether a particular

use of property was permitted and intended is determined by looking to the nature of the property itself. (*Wojdyla*, 148 Ill. 2d at 426.) The Illinois legislature has expressly limited the duty of a municipality with regard to maintaining its property to a duty of ordinary care to permitted and intended users of the property. Therefore, the question of whether a municipality owes a duty does not depend on whether the plaintiff-pedestrian was struck by a moving vehicle or tripped over a pothole, but rather depends on whether the municipality intended that the plaintiff-pedestrian walk in that part of the street where the injury occurred and permitted the plaintiff-pedestrian to do so. (See *Wojdyla*, 148 Ill. 2d 417.) We note that, except for those cases in which street defects were in the area immediately around a parked vehicle, Illinois courts have refused to impose a duty on municipalities for injuries to pedestrians which were caused by those defects. See *Poindexter v. City of Chicago* (1993), 247 Ill. App. 3d 47 (plaintiff fell in open manhole while crossing street midblock); *Gabriel v. City of Edwardsville* (1992), 237 Ill. App. 3d 649 (plaintiff tripped on a water main cover while crossing street outside the crosswalks); *Greene v. City of Chicago* (1991), 209 Ill. App. 3d 311 (plaintiff stepped into a pothole while crossing street outside the crosswalks); *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911 (plaintiff stepped in hole while walking to his vehicle which was double-parked); *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330 (plaintiff stepped into a hole while crossing street midblock, outside the crosswalk); *Householder v. City of Bunker Hill* (1988), 172 Ill. App. 3d 1037 (plaintiff stepped into a manhole while pushing a vehicle in the street); *cf. Evans v. City of Chicago* (1994), 268 Ill. App. 3d 924.

The appellate court also opined that the costs of guarding against injury "clearly suggest the imposition

of a duty in the pedestrian-defect type of case." (258 Ill. App. 3d at 433-34.) We disagree with the appellate court's conclusion that the costs of guarding against injury are not so prohibitive as to preclude the imposition of a duty in this case. The costs of making all public streets and roadways reasonably safe for unrestricted pedestrian use would be an extreme burden on municipalities with limited resources. Illinois municipalities are currently charged with the duty to use ordinary care to make crosswalks and parking lanes reasonably safe for pedestrian use. (See *Curatola*, 154 Ill. 2d at 214.) Crosswalks and parking lanes are areas in which municipalities manifestly intend that pedestrians walk. We believe the burden of maintaining limited areas for pedestrian traffic is not an undue or harsh burden. However, imposing such a burden with regard to streets and roadways in their entirety would be unduly expensive and burdensome.

Although we are sympathetic to plaintiff's injuries, the Illinois legislature has established a clear public policy to immunize government from the financial burdens of preventing injuries which occur as a result of unintended uses of the streets. The stated purpose of the Act is "to protect local public entities and public employees from liability arising from the operation of government." (745 ILCS 10/1—101.1 (West 1992).) In light of the legislature's clear policy and the necessity of keeping operating costs from becoming prohibitive, we decline the invitation to impose liability on the City of West Frankfort in this case.

In this opinion we do not mandate that all pedestrians always cross our public roadways solely within the provided crosswalks. We simply hold that local municipalities owe no duty to maintain streets and roadways in a reasonably safe condition for pedestrians who choose to cross the street outside the protection of the crosswalks.

In light of the foregoing, we reverse the decision of the appellate court and affirm the decision of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*