657 N.E.2d 903 (1995)
167 Ill.2d 343
212 Ill.Dec. 558
Gregory L. SISK, Appellee,
v.
WILLIAMSON COUNTY, Appellant.
No. 77264.
Supreme Court of Illinois.
October 19, 1995.
*904 Judge & James, Ltd., Park Ridge (Jay S. Judge, Kristine A. Karlin and Lawrence M. Brady, of counsel), for appellant.
Brad L. Badgley, Heiligenstein & Badgley, P.C., Belleville, for appellee.
Justice McMORROW delivered the opinion of the court:
Plaintiff, Gregory Sisk, filed a negligence action in the circuit court of Williamson County against defendant, Williamson County, seeking to recover damages for personal injuries sustained when he fell from a bridge on a country road to the creek bed below. Defendant filed a motion to strike and dismiss plaintiff's complaint for failure to state a cause of action pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1992)). The trial court found that defendant owed no duty to plaintiff and granted defendant's motion. The appellate court reversed, holding that municipalities have a duty to exercise reasonable care to maintain their rural country roads in a reasonably safe condition for use by pedestrians. (261 Ill.App.3d 49, 198 Ill.Dec. 342, 632 N.E.2d 672.) We granted Williamson County's petition for leave to appeal (145 Ill.2d R. 315). The correctness of the trial court's allowance of defendant's motion to dismiss depends upon whether a duty of reasonable care may be imposed on Williamson County to keep its rural country roads free from defects which may cause injuries to pedestrians. We decline to impose such a duty.
Plaintiff's amended complaint alleges that after dark on September 30, 1989, he was driving an automobile on the Williamson County/Franklin County line road in Williamson County, when his car inadvertently struck a concrete bridge which crossed a creek. After the collision, plaintiff exited the automobile to examine the vehicle for damage. At that time he fell from the bridge to the creek bed below, sustaining injuries. Plaintiff's complaint alleged that "weeds which had grown in and around the aforesaid concrete bridge structure and the right-of-way of the roadway, visually obscured the edge of the aforesaid roadway, right-of-way associated therewith and the creekbed below." The complaint further alleged that the *905 defendant, Williamson County, had negligently failed to properly maintain the "right-of-way of the roadway and the aforesaid concrete bridge by failing to cut, mow or otherwise remove weeds which had grown in and around the concrete bridge structure." We consider the bridge a part of the roadway for purposes of the legal issue of whether the municipality owed plaintiff a duty. See 605 ILCS 5/2-202 (West 1992) (Illinois Highway Code).
We accept all well-pleaded facts in plaintiff's complaint as true. (Scott & Fetzer Co. v. Montgomery Ward & Co. (1986), 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022.) "In order to state a cause of action in negligence, plaintiff must plead sufficient facts to establish that defendant owed plaintiff a duty of care, a breach of that duty, and an injury proximately caused by that breach." (Vaughn v. City of West Frankfort (1995), 166 Ill.2d 155, 157-58, 209 Ill.Dec. 667, 651 N.E.2d 1115; Curtis v. County of Cook (1983), 98 Ill.2d 158, 162, 74 Ill.Dec. 614, 456 N.E.2d 116.) Whether defendant owed plaintiff a duty of care is a question of law for the court to decide. Marshall v. City of Centralia (1991), 143 Ill.2d 1, 6, 155 Ill.Dec. 802, 570 N.E.2d 315; Deibert v. Bauer Brothers Construction Co. (1990), 141 Ill.2d 430, 437-38, 152 Ill.Dec. 552, 566 N.E.2d 239.
A municipality's duty to maintain its property is limited by section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3-102 (West 1992)). (Vaughn, 166 Ill.2d at 158, 209 Ill.Dec. 667, 651 N.E.2d 1115.) Section 3-102(a) states in pertinent part:
"(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used * * *." (745 ILCS 10/3-102(a) (West 1992).)
While keeping in mind that the Act "is in derogation of the common law" and must be strictly construed against the local government entity, we must determine whether plaintiff in the case at bar was an "intended and permitted" user of the rural road under section 3-102(a) of the Act. Curatola v. Village of Niles (1993), 154 Ill.2d 201, 207-08, 181 Ill.Dec. 631, 608 N.E.2d 882.
As recently stated by this court, the general rule in Illinois is that because pedestrians are not intended users of streets, a municipality does not owe a duty of reasonable care to pedestrians who walk in a street outside the crosswalks. Vaughn, 166 Ill.2d at 158, 209 Ill.Dec. 667, 651 N.E.2d 1115; Curatola, 154 Ill.2d at 208, 181 Ill.Dec. 631, 608 N.E.2d 882; see Wojdyla v. City of Park Ridge (1992), 148 Ill.2d 417, 170 Ill.Dec. 418, 592 N.E.2d 1098 (plaintiff struck by automobile while crossing highway outside of crosswalk); Scarse v. City of Chicago (1995), 272 Ill.App.3d 903, 906, 209 Ill.Dec. 512, 651 N.E.2d 690 (plaintiff fell over edge of street excavation while exiting a taxi midblock); Gabriel v. City of Edwardsville (1992), 237 Ill.App.3d 649, 178 Ill.Dec. 309, 604 N.E.2d 565 (plaintiff tripped over water main cover in city street); Ramirez v. City of Chicago (1991), 212 Ill.App.3d 751, 156 Ill.Dec. 842, 571 N.E.2d 822 (plaintiff injured while sweeping the curb portion of the street); Risner v. City of Chicago (1986), 150 Ill. App.3d 827, 104 Ill.Dec. 94, 502 N.E.2d 357 (plaintiff struck by bus while crossing the street in the middle of the block); Deren v. City of Carbondale (1973), 13 Ill.App.3d 473, 300 N.E.2d 590 (plaintiff struck by automobile while walking along roadway commonly used by pedestrians).
Plaintiff in the case at bar contends that we should recognize an exception to the general rule and hold that pedestrians are intended and permitted users of rural country roads. Plaintiff cites, and the appellate court relied upon, the Illinois Vehicle Code to support his assertion that he was a permitted and intended user of the roadway and bridge. Section 11-1007 of the Vehicle Code (625 ILCS 5/11-1007 (West 1992)) states:
"(a) Where a sidewalk is provided and its use is practicable, it shall be unlawful *906 for any pedestrian to walk along and upon an adjacent roadway.
(b) Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway.
(c) Where neither a sidewalk nor a shoulder is available, any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of a roadway, and, if on a two-way roadway, shall walk only on the left side of the roadway." (625 ILCS 5/11-1007 (West 1992).)
Plaintiff asserts that the statutory sections cited above along with certain Illinois decisions indicate that pedestrians are permitted and intended users of country roads. The appellate court noted the fact that there are no sidewalks along rural country roads, or street corners or crosswalks at which to cross country roads. The appellate court opined that whether a specific use is "traditional and customary" is a key factor in determining whether such use is intended by the municipality. The appellate court noted that pedestrians have the right to use country roads and that walking upon these country roads is one of the "traditional and customary" uses of country roads. It concluded that pedestrians are permitted and intended users of rural country roads under section 3-102(a). (261 Ill.App.3d at 53-54, 198 Ill.Dec. 342, 632 N.E.2d 672.) The court held that a duty of reasonable care to maintain rural country roads for pedestrian use should be imposed upon the municipality, concluding that, in light of the Vehicle Code, the legislature foresaw that pedestrians would use country roads.
The appellate court overstated the import of two facts in determining that pedestrians are permitted and intended users of country roads. First, the court's reliance on the circumstance that there are no sidewalks or crosswalk which pedestrians might use to travel along a country road is misplaced. The fact that it may have been impossible for the pedestrian to walk on a sidewalk or in a crosswalk is not dispositive. This court explicitly stated in Curatola that "we do not hold that every pedestrian use of the street which is necessary to a permitted use of the street is itself both permitted and intended." Curatola, 154 Ill.2d at 213, 181 Ill.Dec. 631, 608 N.E.2d 882; see also Vaughn, 166 Ill.2d at 162, 209 Ill.Dec. 667, 651 N.E.2d 1115; Householder v. City of Bunker Hill (1988), 172 Ill.App.3d 1037, 123 Ill.Dec. 65, 527 N.E.2d 528.
Second, the appellate court apparently failed to recognize the difference between "permitted" and "intended" uses under section 3-102 of the Act. The court noted that rural country roads are commonly used by persons other than drivers of automobiles, listing such uses as horseback riding, bicycling, jogging, walking and driving farm equipment. (261 Ill.App.3d at 53, 198 Ill. Dec. 342, 632 N.E.2d 672, citing Blumb v. Getz (1937), 366 Ill. 273, 277, 8 N.E.2d 620.) However, most of the activities listed are also common uses of city and residential streets. Illinois courts have concluded that although pedestrians may be permitted users, they are not intended users of streets outside of marked crosswalks or other areas designated and intended for the protection of pedestrians. See Poindexter v. City of Chicago (1993), 247 Ill.App.3d 47, 186 Ill.Dec. 967, 617 N.E.2d 206 (plaintiff fell in open manhole while crossing street midblock); Gabriel v. City of Edwardsville (1992), 237 Ill.App.3d 649, 178 Ill.Dec. 309, 604 N.E.2d 565 (plaintiff tripped on a water main cover while crossing street outside the crosswalks); Greene v. City of Chicago (1991), 209 Ill. App.3d 311,153 Ill.Dec. 899, 567 N.E.2d 1357 (plaintiff stepped into a pothole while crossing street outside the crosswalks); Vlahos v. City of Chicago (1990), 198 Ill.App.3d 911, 145 Ill.Dec. 42, 556 N.E.2d 660 (plaintiff stepped in hole while walking to his vehicle which was double-parked); Mason v. City of Chicago (1988), 173 Ill.App.3d 330, 123 Ill. Dec. 109, 527 N.E.2d 572 (plaintiff stepped into a hole while crossing street midblock, outside the crosswalk); Householder v. City of Bunker Hill (1988), 172 Ill.App.3d 1037, 123 Ill.Dec. 65, 527 N.E.2d 528 (plaintiff stepped into a manhole while pushing a vehicle in the street); cf. Evans v. City of Chicago (1994), 268 Ill.App.3d 924, 206 Ill.Dec. 237, 645 N.E.2d 242 (plaintiff fell into open manhole *907 15 inches outside an unmarked crosswalk).
In Deren, the plaintiff alleged that the road on which he was injured was "regularly used by a large number of pedestrians * * * and that by use, the edge of the roadway had become a pedestrian walkway which the city knew or should have known." (Deren, 13 Ill.App.3d at 474, 300 N.E.2d 590.) The Deren court observed that "[u]ndoubtedly, the streets may be used by pedestrians in various ways; they may dismount in the street from vehicles; they may cross them or on occasion they may, where there is no sidewalk, walk upon the street." The court then stated: "This, however, does not convert the street into a sidewalk. * * * `A street does not become a through street because it is used as a through street. It becomes a through street because it is so designated and appropriate signs placed.'" Deren, 13 Ill.App.3d at 477, 300 N.E.2d 590, quoting Locigno v. City of Chicago (1961), 32 Ill. App.2d 412, 420-21, 178 N.E.2d 124.
The plaintiff cites Molway v. City of Chicago (1909), 239 Ill. 486, 88 N.E. 485, in support of his contention that he was an intended user. In Molway the court found that the City of Chicago owed a duty of reasonable care to persons riding bicycles on city streets. However, Molway was decided over 50 years before the Act was enacted, and at a time when streets were being constructed for pedestrians, equestrians and horse-drawn vehicles, and when automobiles were just beginning to appear. Consequently, we do not feel Molway is applicable to the case at bar.
Illinois courts which have recognized a narrow exception to the general rule have held that a pedestrian entering or exiting a legally parked vehicle was an intended and permitted user of the street around the vehicle. Thus, a duty was imposed on a municipality to maintain the street immediately around legally parked vehicles in a reasonably safe condition for pedestrians. (Curatola, 154 Ill.2d 201,181 Ill.Dec. 631, 608 N.E.2d 882; see also Jorgensen v. Whiteside (1992), 233 Ill.App.3d 783, 174 Ill.Dec. 925, 599 N.E.2d 1009; Torres v. City of Chicago (1991), 218 Ill.App.3d 89, 161 Ill.Dec. 31, 578 N.E.2d 158; Di Domenico v. Village of Romeoville (1988), 171 Ill.App.3d 293, 121 Ill. Dec. 436, 525 N.E.2d 242.) A duty is imposed in these cases because when a municipality provides a parking space on a street, it manifests an intent that people should walk in the area immediately around the parking space. Intent must be inferred from the circumstances. We need look no further than the property itself to determine the municipality's manifestations of intent with regard to use of the property by pedestrians. (Wojdyla, 148 Ill.2d at 426, 170 Ill.Dec. 418, 592 N.E.2d 1098.) The signs, meters and pavement markings which designate parking spaces are clear manifestations of intent that people park their vehicles as well as enter and exit their vehicles in such areas.
In contrast, there are no such manifestations to indicate that Williamson County intended pedestrians to walk on its country roads, much less the specific road and bridge complained of by plaintiff in the case at bar. As the appellate court noted, there are no walkways or crosswalks on rural country roads such as the county-line road in this case. Further, many country roads are gravel roads and often have no shoulder. We believe that the inference to be drawn from these facts, if any, is that municipalities do not intend that pedestrians walk on rural country roads. Although it may become necessary at times for pedestrians to walk on country roads, such use is not a manifestation of the local municipality's intent that pedestrians walk on its country roads or an undertaking by the municipality to make country roads free from defects that might injure pedestrians.
We are mindful that the costs of making all rural country roadways reasonably safe for pedestrian use may place an extreme financial burden on small rural municipalities with limited resources. It is unreasonable to expect government entities to make all their country roads reasonably safe for pedestrians, or to expect them to assure that the edges of all roads are not obscured by gravel or foliage. (See Bainter v. Chalmers Township (1990), 198 Ill.App.3d 540, 144 Ill.Dec. 676, 555 N.E.2d 1195 (municipality owed no duty to driver of automobile to widen roads, *908 smooth gravel, erect signs or mow weeds); Havens v. Harris Township (1988), 175 Ill. App.3d 768, 125 Ill.Dec. 256, 530 N.E.2d 284 (municipality owed no duty to youth riding minibike to widen roads, smooth gravel, erect signs or mow weeds).) The Illinois legislature has established a clear public policy to immunize government from the financial burdens of preventing injuries which occur as a result of unintended uses of roadways. The stated purpose of the Act is "to protect local public entities and public employees from liability arising from the operation of government." (745 ILCS 10/1-101.1 (West 1992).) We hold that the appellate court erred in determining that Williamson County owed a duty to make its rural country roads reasonably safe for pedestrians and in denying Williamson County's motion to dismiss.
In light of the foregoing, we reverse the decision of the appellate court and affirm the decision of the circuit court.
Appellate court reversed; circuit court affirmed.